```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- x
TRACEY CID,                                                 :
                                                            :
                            Plaintiff,                      :
                                                            :         MEMORANDUM AND ORDER
                  -against-                                 :         12-CV-2947 (DLI)(VMS)
                                                            :
ASA INSTITUTE OF BUSINESS &                                 :
COMPUTER TECHNOLOGY, INC. d/b/a ASA                         :
COLLEGE, TED BLOOM, Individually, ANN                       :
SWAIN, Individually, and DEAN DEREK                         :
JACKSON, Individually,                                      :
                                                            :
                            Defendants.                     :
----------------------------------------------------------- x
```

**DORA L. IRIZARRY, U.S. District Judge:**

Tracey Cid ("Plaintiff") commenced this action against ASA Institute of Business & Computer Technology, Inc. ("ASA"), Ted Bloom ("Bloom"), Ann Swain ("Swain"), and Derek Jackson ("Jackson," and, collectively with ASA, Bloom, and Swain, "Defendants") alleging discrimination on the basis of sex and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and New York City Human Rights Law, N.Y. City Admin. Code § 8-101 *et seq.* ("NYCHRL"). Specifically, Plaintiff alleges that she was subjected to a hostile work environment by Bloom, her supervisor, and later retaliated against for reporting Bloom's conduct. Defendants filed the instant motion seeking dismissal for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). For the reasons set forth below, Defendants' motion to dismiss is granted in part and denied in part.

## BACKGROUND

The following facts are taken from Plaintiff's complaint and are accepted as true for the purposes of this motion. On or about February 2011, Plaintiff enrolled in the Associate Degree Office of Administration Program at ASA. (Compl. ¶ 21, Docket Entry No. 1.) In June 2011, as part of a work-study assignment, Plaintiff began working as an assistant in ASA's library under the supervision of Bloom, a librarian. (Compl. ¶¶ 12, 19, 22.) Plaintiff describes herself as an "exemplary employee" who had an above average performance during her tenure. (Compl. ¶¶ 23, 53.)

Plaintiff relies on the following series of factual allegations to support her hostile work environment claim. Beginning in July 2011, while Plaintiff worked at her computer, Bloom stood over her and commented on her physical appearance on numerous occasions, stating, "you are beautiful," "you are a tall and beautiful woman," and "those women have nothing on you." (Compl. ¶ 26.) Interpreting Bloom's comments as advances, Plaintiff "politely rejected" Bloom and tried her best to ignore the comments. (*Id.*)

Bloom also offered Plaintiff gifts. (Compl. ¶ 29.) In one instance, in September 2011, Bloom offered Plaintiff a MacBook computer. (Compl. ¶ 30.) Bloom emphasized that it was especially important to keep this gift a secret from Swain, the library director who supervised both Plaintiff and Bloom. (Compl. ¶¶ 15-16, 30.) After she "reluctantly" accepted the MacBook, Plaintiff noticed a shift in Bloom's attitude, "as if [Bloom] expect[ed] something from [her] in return for this gift." (Compl. ¶ 31.) As an example of the shift, Plaintiff notes that Bloom called Plaintiff's home phone on a number of occasions in October 2011. (Compl. ¶ 32.) That same month, Bloom also invited Plaintiff to lunch. (Compl. ¶ 33.) Plaintiff, who considered Bloom's lunch invitation another sexual advance, declined the offer and told Bloom that "her schedule would not allow for it." (*Id.*)

Plaintiff further alleges that, soon after declining Bloom's lunch invitation, Bloom's behavior changed again as he began treating Plaintiff in a very hostile manner. (*Id.*) Specifically, Bloom told Plaintiff that he would "try his very best to get her fired," and he vowed to ensure that she would be punished. (*Id.*) Additionally, Bloom would yell at Plaintiff and accuse her of failing to perform duties that, in fact, she had completed. (Compl. ¶ 34.) Bloom also reacted in a hostile manner to Plaintiff whenever Plaintiff sought assistance on work related issues. (*Id.*)

In late October 2011, Plaintiff reported Bloom's behavior to Swain. (Compl. ¶ 35.) Specifically, Plaintiff told Swain that, despite dealing with Bloom's behavior for some time, she could no longer tolerate it and noted that Bloom had become very hostile to her since he gave Plaintiff the MacBook as a gift. (Compl. ¶ 36.) Plaintiff also accused Swain of being aware of Bloom's behavior because Swain had received similar complaints about Bloom from other female co-workers. (*Id.*) Swain told Plaintiff she would have a discussion with Bloom. (*Id.*) However, in a follow-up conversation between Swain and Plaintiff, Swain told Plaintiff that her work hours would be reduced and that she would attempt to have Plaintiff's work-study assignment moved to another location. (Compl. ¶ 37.)

On or about December 13, 2011, Swain directed Plaintiff to the back of the library to reprimand her purportedly for breaking the library's rules, and the two had a "mild, verbal disagreement." (Compl. ¶ 39.) Without specifying what Swain said during the incident, Plaintiff claims she believed Swain's comments were inappropriate and offensive. (*Id.*) Plaintiff responded she was tired of Swain's mistreatment, and would report Swain's behavior to supervisors and retain a lawyer. (Compl. ¶ 40.) Immediately following this exchange, Plaintiff observed Swain visit ASA's administration office. (*Id.*)

On or about December 16, 2011, Jackson, ASA's Dean of Students, called Plaintiff into a meeting to discuss the December 13, 2011 exchange with Swain. (Compl. ¶ 41.) In the meeting, Plaintiff asked Jackson if he was aware of Bloom's conduct. (*Id.*) Plaintiff also told Jackson that Swain had done nothing in response to her complaints about Bloom. (*Id.*) Jackson told Plaintiff that their meeting would need to be rescheduled for a later date. (*Id.*)

A few days later, on or about December 20, 2011, Jackson called Plaintiff and informed her that she would be removed from ASA's library and placed in ASA's career services department on a temporary basis until another suitable assignment was found. (Compl. ¶ 42.) Although Plaintiff exceeded the work-study program's minimum grade point average requirements, in a follow-up meeting with Jackson on January 3, 2012, Jackson informed Plaintiff she could no longer work in the library, and that she could no longer participate in the work-study program. (Compl. ¶ 43.) Despite her complaints about Bloom's conduct, Plaintiff contends that Bloom was never disciplined or investigated. (Compl. ¶¶ 37, 38.)

In her complaint, Plaintiff asserts seven claims against Defendants, including hostile work environment claims under Title VII and NYCHRL (Counts One and Three), retaliation claims under Title VII and NYCHRL (Counts Two and Five); aiding and abetting under NYCHRL (Count Four); interference with protected rights under NYCHRL (Count Six); and employer liability under NYCHRL (Count Seven).

## DISCUSSION

**I.     Legal Standard**

Rule 12(b)(6) states that, in lieu of an answer, a defendant may move for dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To determine whether dismissal pursuant to Rule 12(b)(6) is appropriate, "a court must accept as true all [factual] allegations contained in a complaint," but need not accept "legal

4

conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). For this reason, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to insulate a claim against dismissal. *Id.* Moreover, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint . . . has not shown that the pleader is entitled to relief." *Id.* at 679 (internal citations and quotation marks omitted).

## II. Hostile Work Environment

### A. Title VII

As her first claim, Plaintiff alleges that she was subjected to unlawful discrimination through the creation of a severe and pervasive hostile work environment in violation of Title VII. (Compl. ¶¶ 61-63; Pl.'s Mem. of Law in Opp'n to Defs.' Mot. to Dismiss at 7-9, Docket Entry No. 15.) To state a hostile work environment claim, a plaintiff must plead facts that would tend to show that the conduct: (1) is objectively severe or pervasive—that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's sex. *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007). Factors that courts consider in evaluating such a claim include: "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is threatening and humiliating, or a mere offensive utterance; and (4) 'whether it unreasonably interferes with an employee's work performance.'" *Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

"[T]o avoid dismissal under [Rule] 12(b)(6), a plaintiff need only plead facts sufficient

5

to support the conclusion that she was faced with harassment . . . of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse." *Id.* (quoting *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003)) (internal quotations omitted). The Second Circuit has "repeatedly cautioned against setting the bar too high" in the context of a motion to dismiss a hostile work environment claim. *Id.* "[T]here is neither a threshold 'magic number' of harassing incidents that gives rise, without more, to liability as a matter of law, nor a number of incidents below which a plaintiff fails as a matter of law to state a claim." *Richardson v. N.Y. State Dept. of Corr. Serv.*, 180 F.3d 426, 439 (2d Cir. 1999) (citations omitted).

ASA advances two primary arguments to support dismissal of Plaintiff's Title VII hostile work environment claim. Both arguments are unavailing.

First, ASA contends that Plaintiff's allegations are based on "episodic and isolated comments" that do not create an objectively severe or pervasive environment under Title VII. (Mem. of Law in Supp. of Defs.' Rule 12(b)(6) Mot. to Dismiss ("Defs.' Mem.") at 3-6, Docket Entry No. 14.) In support of this argument, ASA focuses entirely on the nature of the purported advances themselves—in particular, the fact that Bloom's comments concerning Plaintiff's physical appearance, the gifts, phone calls, and invitation to lunch did not involve physical touching or sexually explicit language—to argue that this case is analogous to various cases where hostile work environment claims were dismissed premised on minor, isolated advances. (Defs.' Mem. at 5-7.)

Yet, in advancing this argument, ASA fails consider that "a claim of gender-based hostile work environment . . . may be premised on evidence that a supervisor heaped abuse on the plaintiff because she had rejected his sexual advances." *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 548 (2d Cir. 2010) (citing *Fitzgerald v. Henderson*, 251 F.3d 345, 361 (2d Cir. 2001)).

Specifically, ASA's argument fails because it glosses over Bloom's conduct *after* Plaintiff rejected his advances, including Plaintiff's allegations that Bloom threatened that he would attempt to have Plaintiff punished and fired, exhibited general hostility whenever Plaintiff requested assistance on work related issues, and yelled at Plaintiff and would accuse her, without any basis, of failing to perform job duties. (Compl. ¶¶ 33-36.) This conduct, when viewed together with the remainder of Plaintiff's allegations, is sufficient to withstand dismissal at this stage. *Compare Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 2011 WL 3586060, at *10 (S.D.N.Y. July 29, 2011) (dismissing hostile work environment claim where "the alleged sexual advances involved two isolated instances of propositioning in December 2007, and Plaintiff does not contend that any further comments or intrusive behavior took place during the four months afterwards") *with Howard v. Cannon Indus., Inc.*, 2012 WL 5373458, at *7 (W.D.N.Y. Oct. 30, 2012) (denying defendant's motion for summary judgment on hostile work environment claim where plaintiff contended that her supervisor "was frustrated by her rejection, began to unfairly criticize her work and blame her for matters that were outside of her control").

Second, ASA seeks dismissal by relying on the *Faragher-Ellerth* defense. (Defs.' Mem. at 7.) The *Faragher-Ellerth* defense, which allows an employer to avoid liability or damages for a hostile work environment created by a supervisor, "consists of two elements: that (1) 'the employer exercised reasonable care to prevent and correct promptly any [discriminatory] harassing behavior,' and (2) 'the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.'" *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 103 (2d Cir. 2010) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998)). Additionally, an employer may raise the *Faragher-Ellerth* defense "only if either (1)

7

the employee's supervisor took no 'tangible employment action,' . . . against the employee; or (2) any tangible employment action taken against the employee was not part of the supervisor's discriminatory harassment." *Id.*

ASA contends that the *Faragher-Ellerth* defense applies because Plaintiff fails to adequately allege that Bloom's behavior continued after she reported the conduct to Swain. (Defs.' Mem. at 7.) However, the defense is inapplicable here in light of Plaintiff's allegation that her complaints about Bloom, which she raised to Swain, Bloom's direct supervisor, and then to Jackson, ASA's Dean of Students, were ignored and never investigated. (Compl. ¶¶ 37, 38, 45.) Moreover, is it not apparent from the face of the complaint that Bloom's behavior, in fact, did cease once Plaintiff reported his conduct to Swain. (Compl. ¶¶ 33-40.) Accordingly, ASA's reliance on the *Faragher-Ellerth* defense is unavailing.

For these reasons, and drawing all reasonable inferences in Plaintiff's favor at this stage, ASA's motion to dismiss Plaintiff's Title VII hostile work environment is denied.

B. NYCHRL

Plaintiff also asserts a direct hostile work environment claim, as well as a related aiding and abetting claim, against all Defendants under NYCHRL. (Compl. ¶¶ 67-72.)

i. *Direct Liability*

Section 8–107(1)(a) of NYCHRL makes it unlawful "[f]or an employer *or an employee or agent thereof*, because of the actual or perceived . . . gender, . . . to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment." NYCHRL § 8–107(1)(a) (emphasis added). In contrast to Title VII, claims under NYCHRL provide for individual liability and receive an "independent liberal construction." *Loeffler v. Staten Island Univ. Hosp.*,

8

582 F.3d 268, 278 (2d Cir. 2009) (citing *Williams v. N.Y. City Hous. Auth.*, 61 A.D.3d 62, 66, 872 N.Y.S.2d 27, 31 (1st Dep't 2009)); *Rozenfeld v. Dep't of Design & Const. of City of New York*, 875 F. Supp. 2d 189, 209 (E.D.N.Y. 2012) ("The [NYCHRL] was intended to be more protective than the state and federal counterpart, and thus [t]he standard for maintaining a hostile work environment claim is lower under the [NYCHRL].") (citation and internal quotation marks omitted).

Collectively, Defendants contend that Plaintiff's allegations concerning Bloom's conduct do not establish a hostile work environment under NYCHRL. (Defs.' Mem. at 7-9.)  However, in recognition of the more lenient NYCHRL standard, the Court finds that Plaintiff's allegations are sufficient to state a hostile work environment claim under NYCHRL for the reasons previously discussed.  *See Adams v. City of New York*, 837 F. Supp. 2d 108, 127 (E.D.N.Y. 2011) ("Where the Court has already determined that plaintiffs' claims survive . . . under Title VII and the NYSHRL, it is assumed that those claims also satisfy the NYCHRL standard.").

Separately, Swain and Jackson contend that Plaintiff's hostile work environment claim should be dismissed as to them because the claim relates entirely to conduct and behavior by Bloom, not Jackson and Swain. (Defs.' Mem. at 9-10.)  The Court agrees, as there are no allegations in the complaint that Swain and Jackson participated in the discriminatory conduct that gave rise to Plaintiff's initial complaints regarding a hostile work environment, let alone any allegation from which it can reasonably be inferred that Swain and Jackson acted improperly on the basis of Plaintiff's sex.  Indeed, in her opposition papers, Plaintiff does not appear to contest this point.  *See Reid v. Ingerman Smith LLP*, 876 F. Supp. 2d 176, 186 (E.D.N.Y. 2012) (deeming plaintiff's state law discrimination claim abandoned on motion to dismiss where plaintiff failed to respond to arguments in her opposition brief).  Accordingly, the motion to

9

dismiss Plaintiff's direct hostile work environment claim under NYCHRL is granted as to Swain and Jackson, and denied as to the other Defendants.

> ii. *Aiding and Abetting Liability*

Section 8-107(6) of NYCHRL provides for aiding and abetting liability and makes it an "unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter." NYCHRL § 8-107(6).

Swain and Jackson separately argue that they cannot be held liable as aiders and abettors because Plaintiff does not allege that they engaged in any of the purported harassment. (Defs.' Mem. at 9-10.) However, Plaintiff's allegations that Swain and Jackson failed to investigate or take remedial action in response to Plaintiff's complaints provides a sufficient basis for an aiding and abetting claim under NYCHRL. *See Morgan v. NYS Atty. Gen.'s Office*, 2013 WL 491525, at *13 (S.D.N.Y. Feb. 08, 2013) ("[A]ider-and-abettor liability [under NYCHRL] may extend to supervisors who failed to investigate or take appropriate remedial measures despite being informed about the existence of alleged discriminatory conduct.") (citing *Feingold v. New York*, 366 F.3d 138, 157-59 (2d Cir. 2004)); *Anderson v. Davis Polk & Wardwell LLP*, 850 F. Supp. 2d 392, 404 (S.D.N.Y. 2012) (noting that "an employee may be held personally liable as an aider and abettor for failing to take remedial action in response to a complaint of sexual harassment under the . . . NYCHRL") (citing *Patane*, 508 F.3d at 115 n.7); *Regan v. Benchmark Co. LLC*, 2012 WL 692056, at *14 (S.D.N.Y. Mar. 1, 2012) (finding that plaintiff sufficiently stated aiding and abetting claim under NYCHRL, based, in part, on allegation that individual managers "refused to take remedial action when [plaintiff] complained about discriminatory treatment").

The motion to dismiss Plaintiff's aiding and abetting claim, therefore, is denied as to all Defendants.

**III.     Retaliation**

    A.     Title VII

Plaintiff also asserts a retaliation claim against ASA pursuant to Title VII, 42 U.S.C. § 2000e–3(a). (Compl. ¶¶ 64-66.) ASA argues that this claim should be dismissed because Plaintiff engaged in misconduct shortly before she was terminated from the work-study program. (Defs.' Mem. at 10-12.) To support this argument, ASA submits, and relies entirely on, an e-mail that is not attached to or otherwise referenced in Plaintiff's complaint. (*Id.*) For the reasons detailed below, the Court will not consider the e-mail and denies ASA's motion to dismiss Plaintiff's Title VII retaliation claim.

The antiretaliation provision of Title VII "forbids employer actions that 'discriminate against' an employee . . . because he has 'opposed' a practice that Title VII forbids or has 'made a charge, testified, assisted, or participated in' a Title VII 'investigation, proceeding, or hearing.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59 (2006) (citing 42 U.S.C. § 2000e–3(a)). The scope of the antiretaliation provision is limited to those "employer actions that would have been materially adverse to a reasonable employee or job applicant." *Id.* at 57; *see also id.* at 68 ("We speak of *material* adversity because we believe it is important to separate significant from trivial harms. Title VII, we have said, does not set forth a general civility code for the American workplace." (citation and internal quotation marks omitted) (emphasis in original)). Thus, to fall within the purview of the antiretaliation provision, an "employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Id.* at 57; *see also Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 165 (2d Cir. 2011) (noting that "[t]o separate the significant from the trivial, the *Burlington Northern* standard employs an 'objective' test, which considers whether the

11

action would deter a 'reasonable employee' from exercising his rights." (quoting *Burlington*, 548 U.S. at 68)).

To state a Title VII retaliation claim, a plaintiff must plead facts tending to show that: (1) the plaintiff participated in a protected activity known to the defendant; (2) the defendant took an employment action disadvantaging the plaintiff; and (3) the existence of a causal connection between the protected activity and the adverse action. *Patane*, 508 F.3d at 115 (citing *Feingold*, 366 F.3d at 156. The causal connection can be established by showing a temporal proximity between the protected activity and the adverse action. *See Feingold*, 366 F.3d at 156-57 (collecting cases).

ASA argues that Plaintiff cannot establish a causal link between the protected activity and her termination because, on December 13, 2011, just before Plaintiff was terminated, Plaintiff engaged in misconduct and subordination.[1] (Defs.' Mem. at 10-12.) Although Plaintiff's purported insubordination is not apparent from the four corners of Plaintiff's complaint, it is referenced in the e-mail dated December 13, 2011 and attached as an exhibit to Defendants' opening brief (the "December 2011 E-mail"). The December 2011 E-mail, which is authored by Plaintiff and addressed to Swain, states as follows: "I would like to respectfully apologize for my behavior this evening. I have been under a lot of stress lately, but that is still no excuse for my actions. [O]nce again I'm truly sorry. Please accept my apologies." (Defs.' Mem., Ex. B.) In their brief, Defendants further note that Plaintiff's apology arises from an incident on December 13, 2011 in which Plaintiff "verbally threatened and directed profanity at

---

[1] ASA does not dispute that Plaintiff participated in a protected activity and was subject to an adverse employment action. (Defs.' Mem. at 10-12.)

12

Swain in the presence of students and co-workers."[2] (Defs.' Mem. at 1.) Plaintiff does not contest the authenticity of the December 2011 E-mail or the accuracy of the factual representations made in Defendants' brief, but nonetheless objects to the Court's consideration of the document.

On a motion to dismiss pursuant to Rule 12(b)(6), "the district court is normally required to look only to the allegations on the face of the complaint." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007). However, in certain limited circumstances, a court may consider documents outside the complaint, such as documents attached to the complaint as exhibits, documents incorporated by reference in the complaint, matters of which judicial notice may be taken, and documents that are either in a plaintiff's possession or of which a plaintiff had knowledge and relied on in filing the complaint. *Halebian v. Berv*, 644 F.3d 122, 131 n.7 (2d Cir. 2011) (internal citations and quotation marks omitted). However, "a plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Id.* (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (emphasis in original)).

ASA relies heavily on *Johnson v. Port Authority of New York and New Jersey, Worldwide Flight Services, Inc.*, 2009 WL 2227921 (E.D.N.Y. July 24, 2009) to suggest that the Court can consider the December 2011 E-mail as part of the instant motion. *Johnson*, however, in inapposite. In that case, the plaintiff alleged that he was discriminated against when he was denied security clearance by the Port Authority. *Id.* at *1. In ruling on a Rule 12(b)(6) motion to

---

[2] Plaintiff's complaint, in contrast, characterizes this same incident a "mild, verbal disagreement between [Plaintiff] and [Swain]," in which Swain reprimanded and mistreated Plaintiff for purportedly breaking library rules. (Compl. ¶ 39.)

13

dismiss, the court concluded that a letter from the Port Authority—which notified the plaintiff that his security clearance had been denied, but was not attached to the complaint—was incorporated by reference because the plaintiff's complaint made "clear reference" to the document. *Id.* at *2 n.3.  Here, in contrast, Plaintiff's complaint does not refer to the December 2011 E-mail, directly or otherwise, and Plaintiff's allegations do not suggest that she relied on the December 2011 E-mail in drafting the complaint.  As such, the document will not be considered as part of the instant motion.

Although the December 2011 E-mail might cast doubt on the accuracy of Plaintiff's allegations (in particular, Plaintiff's claim that she was an exemplary employee at all relevant times), the Court must, and does accept at true, the non-conclusory factual allegations in Plaintiff's complaint.  In doing so solely for the purposes of this motion to dismiss, the Court finds that the context and sequences of events alleged—beginning with Plaintiff's initial complaints to Swain in October 2011 and Jackson in December 2011 and her subsequent firing in January 2012—took place within a sufficiently close timeframe to state a plausible retaliation claim.  *See Summa v. Hofstra Univ.*, --- F.3d ---, 2013 WL 627710, at *9-10 (2d Cir. Feb. 21, 2013).

   B. NYCHRL

Plaintiff also asserts a retaliation claim, along with a related aiding and abetting claim, against all Defendants under NYCHRL.  (Compl. ¶¶ 70-75.)  Section 8-107(6) of NYCHRL provides that "[i]t shall be an unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has . . . opposed any practice forbidden under this chapter . . . ." NYCHRL 8-107(6).  Defendants collectively argue that Plaintiff's purported misconduct

14

preludes her from asserting retaliation claims under NYCHRL.  (Defs.' Mem. at 11-12.) However, as with Plaintiff's Title VII claim, the nature of plaintiff's allegations and the sequence of alleged conduct, taken as true, state a plausible retaliation claim under NYCHRL.

Separate from the other Defendants, Bloom and Swain argue, in a conclusory fashion, that they are not subject to liability for retaliation under NYCHRL, directly or otherwise, because "[Plaintiff] has not pled that either of them had any authority to make personnel decisions with respect to [Plaintiff's] employment."  (Defs.' Mem. at 11-12.)  Because Bloom and Swain do not support this argument with sufficient analysis or explanation, the Court only addresses it briefly. As a preliminary matter, Bloom and Swain's argument is flawed insofar as it suggests that NYCHRL retaliation claims can only be asserted against supervisors that have the authority to hire and fire employees.  *See Malena v. Victoria's Secret Direct, LLC*, 2012 WL 3542192, at *14 (S.D.N.Y. Aug. 16, 2012) (noting that "NYCHRL provides for individual liability of an employee regardless of ownership or decisionmaking power") (internal quotations and citation omitted).  And, in any event, Plaintiff's allegations lead to the reasonable inference that Bloom and Swain had authority over personnel decisions and actually participated in conduct giving rise to Plaintiff's retaliation claim.  Indeed, Plaintiff alleges that both Bloom and Swain had supervisory authority over Plaintiff and, in that capacity, reprimanded Plaintiff, without basis, and threatened to attempt to have her transferred or fired around the time that Plaintiff complained about Bloom's behavior.  Thus, Plaintiff's allegations, taken together, reasonably lead to the inference that Bloom and Swain actually participated in the conduct giving rise to Plaintiff's claim.  *See Malena*, 2012 WL 3542192, at *14-15 (declining to dismiss direct-liability retaliation claim and related aiding-and-abetting claim asserted against manager in light of evidence that "[the manager] suppl[ied] the intent and the complaints that may have led to

15

[p]laintiff's termination").

Accordingly, Defendants' motion to dismiss Plaintiff's NYCHRL retaliation and aiding and abetting claims is denied.

## IV. Remaining Claims

Plaintiff's complaint also asserts two additional claims under NYCHRL: "Interference with protected rights" (Section 8-107(19)), and "Employer liability for discriminatory conduct by employee, agent or independent contractor" (Section 8-107(13)). (Compl. ¶¶ 76-82.) Defendants contend that these claims should be dismissed on the basis that Plaintiff's NYCHRL hostile work environment and retaliation claims are insufficiently pled. (Defs.' Mem. at 2.) However, because the hostile work environment and retaliation claims have not been dismissed, the Court declines to dismiss these remaining two claims.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is granted in part and denied in part. Specifically, the motion is denied for Counts One, Two, Four, Five, Six, and Seven. The motion is granted for Count Three as to Swain and Jackson, and denied for Count Three as to ASA and Bloom.

SO ORDERED.

Dated: Brooklyn, New York
       March 22, 2013

_____/s/_____
DORA L. IRIZARRY
United States District Judge